McLarty *et al.* v. Ashmore.

[91 South. 421. No. 22513.]

Chattel Mortgages. *Deed of trust on personal property immediately taken to county of buyer's residence not constructive notice*

*to subsequent purchaser for valuable consideration unless record-*
*ed in such county.*

Under section 2787, Code 1906 (section 2291, Hemingway's Code),
and section 2785, Code 1906 (section 2289, Hemingway's Code),
providing that all mortgages and deeds of trust on personal prop-
erty, to be effectual against subsequent purchasers for value
without notice, shall be recorded in the county in which the
property may remain, where personal property is sold and is
immediately carried to, and thereafter remains in, the county
of the purchaser's residence, a deed of trust to secure the pur-
chase price of such property must be recorded in the county of
the purchaser's residence to render it constructive notice to a
subsequent purchaser for a valuable consideration.

APPEAL from circuit court of Pontotoc county.

Hon. C. P. Long, Judge.

Suit by Guy McLarty, trustee, and others, against J.
W. Ashmore. Judgment of dismissal, and plaintiffs ap-
peal. Affirmed.

*C. L. Bates* and *John Falkner, Jr.,* for appellants.

(1) Appellant Hawkins is not a mere lien-holder he is
the absolute owner of the property, and condition having
been broken, he can maintain any action which any other
owner of property may maintain.

In *Elson* v. *Barrier, supra,* which is directly in point,
CAMPBELL, Justice, said: "A deed of trust does not create
a mere lien; it confers title, and after condition broken,
the legal title is in the grantee, and he may maintain any
action which an owner can maintain."

And in that case the learned judge states the distinc-
tion between agricultural liens and legal titles conferred
by a deed of trust, saying: "Hence, the manifest distinc-
tion between the two classes of cases. The difference is
between a mere right to fasten a charge on a thing, and a
title to a thing with all the incidents of title."

The sale and delivery of the mules, by Hawkins to Dor-
sett and the execution of the note and deed in trust by him
were all parts of one transaction, which fixed the title to

the mules absolutely in Hawkins, who was as much the owner after as before the transaction; the note was due on demand; Hawkins did not give his permission for the removal of the property from Lafayette county; here the deed in trust was recorded, and under the two cases above cited, the record in that county protects him against all purchasers even for value.

(2)   Even if the deed in trust executed by Dorsett be regarded as only creating a lien, still its record in Lafayette county only will protect Hawkins against the claims of the appellee. *Bogard* v. *Gardley, supra,* which is on all fours with the case at bar, having been decided under the registration statute now in force, holds that: "The removal by the grantor in a deed of trust, of personal property from the county in which the deed of trust was recorded, to another county, will not, unless shown to have been done with the permission of the trustee or *cestui que trust,* affect the lien previously attached by the deed."

And in deciding that case, the court said: The removal by the grantor in the deed of trust of the slave from Leake to Marshall county, is not shown to have been done with the permission of the trustee, or *cestui que trust,* who claimed title under the deed. The statute H. & H., 344, S. 4, requiring a deed respecting personal property to be recorded in the county to which the property is removed, does not affect the lien previously attached by the deed, without such removal, is shown to have been made with the consent, permission, or participation of the person claiming title under it.

Neither Hawkins nor his trustee consented nor gave their permission to nor participated in the removal of the mules from Lafayette county.   It is respectfully submitted that the judgment of the circuit court of Pontotoc county should be reversed and judgment entered here for appellants.

128 Miss.—47

*Marshall T. Adams,* for appellee.

It seems to us that appellants' ideas of the issue are made out by the facts as set forth. The authorities referred to by appellants, that is, *Elson* v. *Barrier,* 56 Miss. 394, and *Bogard* v. *Gardley,* in 4 S. & M. 302, deal altogether with the proposition of permission to remove property from the county where the trust or mortgage has been properly filed and recorded under section 2785, Code of 1906, being the same as section 2305, Code of 1871, under which the above decisions were rendered, when in the present case the question presented is whether or not the appellant and mortgagee, Hawkins, had his trust filed and recorded in the proper place in the first instance, as required by section 2785 of the Code of 1906. We contend that the statute was not followed out by appellant Hawkins in this instance, inasmuch as the mortgagor, at the time of giving the mortgage, lived in Pontotoc county and immediately carried the property to his home in said county. The *situs* of personal property being with the owner and possessor and that the mortgage held by Hawkins, against these mules should have been filed and recorded in Pontotoc county, and in failing to do this, appellant Hawkins forfeited any right that he might have had under the law to take this property, which was to that time in the possession of appellee, an innocent purchaser, for a valuable consideration, without notice either actual or constructive.

Our statute 2785, Code 1906, requires all liens on personal property to be recorded in the county where the property is to remain. At common law, all chattel mortgages had to be accompanied by the delivery of the property to the mortgagee. The recording feature thereof, which was passed by our legislature to release such necessity of delivery, being a statutory enactment, and made to obviate this bunglesome and expensive way to accomplish the force and effect of such an instrument, of course, is to be strictly construed, and if the mortgagee fails to inform himself correctly of where the property is to re-

main, and records his mortgage in the wrong county, he does so at his own peril.

If a condition afterward arises under which he or his *bona-fide* purchaser must one or the other lose, the loss will fall upon the mortgagee. We find that under those statutes where record of such instruments is required to be made in the county of the residence of the mortgagor, it must be so recorded; and that in those states where they have statutes like or similar to the Mississippi statute, which requires record in the county or recording district where the property is to remain, the record must be made there. In a very similar statute of Kentucky, providing that chattel mortgages, to be effectual against purchasers without notice, etc., shall be recorded in the county in which the property conveyed shall be.

A mortgage on a horse and other personal property must be recorded in the county of the owner's residence. This is the case of *Coopage* v. *Johnson,* 55 S. W. 424. The rule in all of these jurisdictions is uniform and without exception. The California statute provides that chattel mortgages shall be recorded in the county where the property is situated. Under this statute it was decided that a single mortgage embracing several things so situated, that separate mortgages thereon would be required to be recorded in different places, shall be valid only in respect to the property where recorded; and that a mortgage covering property in two counties and only recorded in one is void as to the property in the other county as against the trustee of the mortgagor in bankruptcy. The case of *Gurass* v. *Porter,* in 118 F. 668, and also in the case of *Cowden* v. *Mills,* 75 Pac. 776, same being an Idaho case. In the case of *Morris* v. *Ellis,* 46 N. E. 41, it was held under a statute which requires the mortgage to be recorded in the county where mortgagor resides, that such mortgage executed by a firm must be recorded in each of the counties where any of the partners reside. We refer the court respectfully to 55 S. W. 424, 69 S. W. 712, 62 N. E. 776, the latter being a Massachusetts case; 73 N. E. —, a New York case, 91 N.

W. 339, a South Dakota case, all of which and a host of other cases to be found in volume 4 of the American Digest, 1897-1906, Decennial Edition, which bear out our contention as to the construction of this statute.

We respectfully submit that the judgment of the lower court in this case was proper and correct, and should be affirmed.

Cook, J., delivered the opinion of the court.

Appellant Hawkins, who resided at Oxford, in Lafayette county, Miss., sold a pair of mules to T. O. Dorsett, who resided in Pontotoc county. At the time of the purchase of the mules, Dorsett executed and delivered to Hawkins a deed of trust on the mules to secure the payment of his promissory note for a balance of the purchase price of the mules, and this deed of trust was promptly filed for record in Lafayette county. At the time of the sale of the mules, Hawkins believed that Dorsett was a resident citizen of Lafayette county, and that the mules would remain in that county, but, in fact, Dorsett was and had been for some time a resident citizen of the adjoining county of Pontotoc; his residence and barn being near the line dividing Lafayette and Pontotoc counties. Dorsett kept the mules in his possession in Pontotoc county for about one month, when he sold them to one Alexander, who also lived in Pontotoc county. Alexander then carried the mules to the town of Pontotoc and sold them to the appellee, Ashmore, for a cash consideration, and the mules thereafter remained in the possession of appellee in Pontotoc county. At the time appellee purchased the mules he had no actual notice of appellant's deed of trust. Appellant Hawkins knew of the sale of the mules to Alexander before the appellee, Ashmore, bought them, but he made no effort to have the trustee in his deed of trust take possession of the property and foreclose the trust deed, and he did not file his deed of trust for record in Pontotoc county until after the appellee had purchased the mules and had refused to sur-

render them on demand. Appellee having refused to sur-render possession of the mules, the deed of trust was filed for record in Pontotoc county, and appellant then insti-tuted this suit to recover possession of the property. By agreement the cause was tried before the court, without the intervention of a jury, on an agreed statement of facts, and from a judgment dismissing the suit this appeal was prosecuted.

The only question presented for decision is whether, under the facts here, the record of the deed of trust in Lafayette county constituted constructive notice to ap-pellee.

Section 2787, Code of 1906 (section 2291, Hemingway's Code), provides that:

"All deeds of trust and mortgages whatsoever, shall be void as to all creditors and subsequent purchasers for a valuable consideration without notice, unless they be ac-knowledged or proved and lodged with the clerk of the chancery court of the proper county, to be recorded in the same manner that other conveyances are required to be ac-knowledged or proved and recorded."

Section 2785, Code of 1906 (section 2289, Hemingway's Code), provides, in part, as follows:

"Every writing respecting the title to personal property which by law ought to be recorded, shall be recorded in the office of the clerk of the chancery court of the county in which such property may remain."

Under the latter section, in order for the record of the trust deed to constitute constructive notice to subsequent purchasers for a valuable consideration, it was necessary that it be recorded in the county where the property covered thereby was to remain. At the time of the purchase of the mules by Dorsett, he actually resided in Pontotoc county, and it is clear from the record that appellant understood that the mules would be carried to Dorsett's residence, and that he expected them to remain in the county in which the purchaser resided, and, since the mules were to remain in Pontotoc county, it was necessary

that appellant record his deed of trust in that county in order to preserve his lien against subsequent purchasers for a valuable consideration, without actual notice thereof. Acting under a mistaken belief that the grantor in the deed of trust resided in Lafayette county, and that the mules would remain in that county, appellant failed to record the deed of trust in Pontotoc county, and he cannot now maintain this suit against appellee, who was a subsequent purchaser for value without notice, either actual or constructive.

For a reversal of this case appellant relies principally upon the cases of *Bogard* v. *Gardley,* 4 Smedes & M. 302, and *Elson* v. *Barrier,* 56 Miss. 394, but these cases deal only with the proposition of the removal of personal property from the county in which a deed of trust thereon is properly recorded to another county, by the permission of the beneficiary or trustee, and therefore are not applicable to the facts of this case.

*Affirmed.*